NORTHWESTERN NATIONAL INSUR-
ANCE COMPANY as Subrogee for
David Jerome SWANBERG, creditor,
Respondent,

v.

Dawn Marie CARLSON,
debtor, Respondent,

and

Farmers Insurance Group, a foreign
corporation, garnishee,
Appellant.

No. A05–943.

Court of Appeals of Minnesota.

March 7, 2006.

Anthony S. Aspnes, Edina, MN, for respondent Northwestern National Insurance Company.

Roger L. Kramer, Gislason & Hunter, LLP, Minnetonka, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; PETERSON, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

On appeal from summary judgment in a garnishment action, the garnishee insurer argues that the district court erred in concluding that the debtor insured's breach-of-contract action arising out of the insurer's duty to indemnify was not barred by the statute of limitations. Because the debtor insured's breach-of-contract action did not arise until the creditor insurer obtained a judgment against her, we affirm.

## FACTS

This garnishment action arises out of an automobile accident that occurred on August 11, 1994. On that date, respondent Northwestern National Insurance Company's (Northwestern National) insured, David Swanberg, was injured when he was hit by a car driven by respondent Dawn Carlson. Carlson believed that she had liability coverage on the date of the accident through appellant Farmers Insurance Group (Farmers) and submitted her claim on August 12, 1994. When Carlson reported the accident to Farmers, Farmers notified Carlson that no coverage was in place because Farmers had canceled the policy for nonpayment of premium in July. Carlson denied that Farmers provided the advance written notice of cancellation required by Minnesota law.

Swanberg sought compensation for his injuries from Northwestern National under his uninsured motorist coverage. In December 1995, Northwestern National paid Swanberg $21,000 in full settlement of his uninsured motorist claims and, in October 1996, commenced a subrogation action against Carlson to recover $21,000, the sum paid to Swanberg under its uninsured motorist coverage. Carlson advised Northwestern National that a coverage dispute existed between her and Farmers, and she maintained that she was insured under a motor vehicle liability policy from Farmers entitling her to indemnity for any liability she might have to Northwestern National or Swanberg.

In May 1999, Northwestern National and Carlson stipulated for settlement of Northwestern National's subrogation action and, pursuant to *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982), agreed to entry of judgment against Carlson for the $21,000 that Northwestern National had

paid Swanberg.[1] Northwestern National agreed to collect the stipulated judgment only from any liability insurance Carlson might have for the loss. The district court entered Northwestern National's stipulated judgment against Carlson on January 5, 2000.

In January 2004, Northwestern National commenced a garnishment action against Farmers to enforce the judgment entered on January 5, 2000. Farmers filed a non-earnings disclosure disclaiming any liability to Carlson because there was no policy in effect on the date of the accident. In February 2004, Northwestern moved for leave to serve Farmers with a supplemental complaint to determine the issue of Farmers's indebtedness to Carlson. The district court granted leave to serve the supplemental complaint.

Farmers moved for summary judgment, arguing that the claims alleged in the supplemental complaint were barred by the six-year statute of limitations for insurance actions set forth in Minn.Stat. § 541.05 (2004). Farmers conceded in its summary judgment motion that it had no evidence to dispute the claims in the supplemental complaint. Accordingly, the parties stipulated that if the court rejected Farmers's statute-of-limitations defense, Northwestern National would be entitled to judgment in its favor against Farmers.

The district court denied Farmers's motion for summary judgment and ordered judgment against Farmers for $21,132 plus interest, costs, and disbursements. The district court entered judgment on March 22, 2005. This appeal follows.

## ISSUE

Did the district court err in concluding that a liability insurer's contractual duty to indemnify does not arise and, therefore, the statute of limitations does not begin to run, until the insured is legally obligated to pay damages?

## ANALYSIS

■ When reviewing an appeal from a grant of summary judgment, this court determines whether there are any genuine issues of material fact and whether the district court erred in applying the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Here, the parties agree that there are no material fact issues. "The construction and applicability of statutes of limitations are questions of law [reviewed] de novo." *Benigni v. County of St. Louis,* 585 N.W.2d 51, 54 (Minn.1998).

■ Northwestern National's garnishment of Farmers is based on Farmers's duty to indemnify Carlson under Farmers's motor vehicle liability insurance policy issued to Carlson. As the creditor, Northwestern National's rights against Farmers in a garnishment action are no greater and no less than Carlson's rights. *See Johnson Motor Co. v. Cue,* 352 N.W.2d 114, 116 (Minn.App.1984) (noting that the creditor in a garnishment action acquires the same rights that the debtor has against the garnishee), *review denied* (Minn. Oct. 11, 1984). Accordingly, the issue presented on appeal is whether the statute of limitations would defeat Carlson's claim that Farmers breached its contractual duty to indemnify Carlson under her liability policy.

Farmers argues that Northwestern National's garnishment action is barred by

---

**1.** In *Miller v. Shugart,* 316 N.W.2d 729, 731 (Minn.1982), the supreme court held that when an insurer unreasonably disputes coverage, the plaintiff and the insured tortfeasor may stipulate a settlement in plaintiff's favor and agree that the judgment will be taken from the insurance policy and not from the tortfeasor's personal assets.

the six-year statute of limitations applicable to breach-of-contract claims under Minn.Stat. § 541.05 (2004). The duty to indemnify is contractual. *Fallon McElligott, Inc. v. Seaboard Sur. Co.,* 607 N.W.2d 801, 803 (Minn.App.2000) (citing *Meadowbrook, Inc. v. Tower Ins. Co.,* 559 N.W.2d 411, 415 (Minn.1997)). In general, a statute of limitations begins to run when a complete cause of action accrues, or when there is a demand capable of present enforcement. *Noske v. Friedberg,* 656 N.W.2d 409, 412 (Minn.App.2003), *aff'd,* 670 N.W.2d 740 (Minn.2003). Under Minnesota law, a cause of action in contract accrues at the time of breach. *Jacobson v. Bd. of Trustees of Teachers Retirement Ass'n,* 627 N.W.2d 106, 110 (Minn.App.2001), *review denied* (Minn. Aug. 15, 2001). A breach of contract is the nonperformance of any duty of immediate performance. Restatement (Second) of Contracts § 235(2) (1981) (stating that "[w]hen performance of a duty under a contract is due any non-performance is a breach").

Farmers argues that the statute of limitation for Carlson's breach-of-contract claim against Farmers for failure to indemnify her against liability started running in August of 1994, when Farmers notified Carlson that they would not defend or indemnify Carlson for her claim and, therefore, the instant garnishment action—filed roughly 10 years later—is barred. Northwestern National argues that the statute of limitations did not begin to run until the district court entered the stipulated judgment against Carlson in January 2000, because Farmers could only breach its duty to indemnify Carlson after Carlson became liable for the judgment.

In order to determine whether the statute of limitations had expired for Carlson's breach-of-contractual-duty-to-indemnify claim, we must first determine when the insurer breached the duty to indemnify: If Farmers had an immediate duty to perform in August 1994, at the time they denied coverage for Carlson's claim, then that denial was a nonperformance of duty constituting a breach of contract and triggering the limitations period.

 The time that actual performance is due is controlled by the insurance contract. The interpretation of insurance contracts is governed by general principles of contract law. *Thommes v. Milwaukee Ins. Co.,* 641 N.W.2d 877, 879 (Minn.2002). When the language of an insurance contract is unambiguous, this court interprets that language in accordance with its plain and ordinary meaning. *Id.* at 880. The Minnesota No–Fault Automobile Insurance Act, Minn.Stat. § 65B.49, subd. 3(2) (2004), provides that a residual liability insurer "shall be liable to pay, on behalf of the insured, sums which the insured is legally obligated to pay as damages because of bodily injury and property damage arising out of the ownership, maintenance or use of any motor vehicle." [2] *See also Lynch ex rel. Lynch v. Am. Family Mut. Ins. Co.,* 626 N.W.2d 182, 188 (Minn. 2001) (distinguishing between liability coverage and underinsured motorist coverage and stating that "[l]iability insurance is third-party coverage, meaning that it pays for damage the insured is legally obligated to pay another person ... for bodily injury").

 Examining the above language, we conclude that Farmers's interpretation of

**2.** Because neither party submitted Carlson's insurance policy into the record or objected to the use of the No–Fault Act's provisions at the district court, we are relying on the standard language provided in the No–Fault Act.

the contract distorts the plain meaning of the language and fails to give effect to all of the contract provisions. Farmers had an obligation to indemnify Carlson only for the sums that she became "legally obligated to pay as damages" because of injuries or damage to which the insurance applied. The contract is devoid of any language indicating that Farmers had a duty to indemnify before Carlson was legally obligated to pay damages. In August 1994, at the time that Farmers notified Carlson that it would not provide coverage for her claim, Carlson was not legally obligated to pay damages for her alleged negligence. Accordingly, Farmers did not have an immediate duty to indemnify her at the time of their denial. Because Farmers was not required to immediately perform its duty to indemnify, the initial refusal to indemnify could not have been the basis for a breach of contract. Rather, as Northwestern National argues, the breach of contract occurred when Farmers refused to indemnify Carlson after the district court entered judgment against her, or after she was legally obligated to pay damages.

This interpretation is consistent with Minnesota precedent requiring a judgment or settlement to trigger an insurer's indemnity obligation. In *Drake v. Ryan,* 514 N.W.2d 785, 787–88 (Minn.1994), the supreme court examined whether a tortfeasor who had been released of all personal liability must remain a party to an action against the tortfeasor's excess liability insurer. The court reasoned that if the tortfeasor was dismissed from the action, the injured party's lawsuit against the excess liability insurer fails because insurance contracts are contracts of indemnity and the injured party must obtain a judgment against the insured on the issue of liability in order to reach the insurance proceeds. Similarly, in *Metro. Prop. &*

*Cas. Ins. Co. v. Metro. Transit Comm'n,* 538 N.W.2d 692, 695–96 (Minn.1995), the supreme court examined when the right of indemnity accrues for an insurer who pays no-fault, economic-loss benefits to a claimant injured through the negligent use of a public bus. Noting that under common law, "the right of indemnity does not accrue until the liability of the party seeking indemnity has become finally fixed and ascertained, or until after the claimant has settled or has paid the judgment," the court held that the insurer's right of indemnity accrued when the insurer made its first payment to the claimant. *Id.* (quotation omitted).

Farmers argues that Northwestern National's interpretation would result in unfair prejudice to insurance carriers who have denied coverage because, as in this case, roughly ten years can pass before the duty to indemnify is triggered. Moreover, Carlson could have brought a declaratory judgment action following Farmers's denial of coverage in August of 1994 to clarify whether she had coverage and, therefore, Carlson or any other future insured would not be prejudiced by running the statute of limitations from the date the insurer denies coverage. But, the supreme court has recognized that inequities exist in a typical insurer/insured relationship: Insurers are more sophisticated and more familiar with their duties under their contracts and how those duties have been interpreted by the courts. *See Home Ins. Co. v. Nat. Union Fire Ins.,* 658 N.W.2d 522, 533 (Minn. 2003). Given this imbalance, it is reasonable in the context of indemnification for damages to place the burden of bringing a declaratory judgment action on insurers who want immediate clarification.

## DECISION

Because Carlson's cause of action against Farmers for breach of its contrac-

tual duty to indemnify did not accrue until she was legally obligated to pay damages pursuant to a district court judgment, Northwestern National's garnishment action—brought within six years from that judgment—was not barred by the statute of limitations.

**Affirmed.**