In re the Marriage of: Steven **JOHNSON, petitioner, Respondent,**

v.

Cheryl **JOHNSON, Appellant.**

A16-1323

Court of Appeals of Minnesota.

Filed September 25, 2017

Cheryl M. Prince, Hanft Fride, Duluth, Minnesota (for respondent).

Bill L. Thompson, Law Office of Bill L. Thompson, Duluth, Minnesota (for appellant).

Considered and decided by Schellhas, Presiding Judge; Reilly, Judge; and Smith, John, Judge.*

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## OPINION

REILLY, Judge

The 2012 judgment dissolving the parties' marriage awarded wife, the parties' marital homestead and required her to hold husband harmless for homestead-related expenses. Wife did not hold husband harmless regarding those expenses, and in 2014 the district court ordered wife to sell the home. When wife failed to do so, in 2016 the district court allowed husband to take possession of the home and ordered him to sell it. Wife appeals the 2016 order. Because the 2014 order affects the 2016 order, and because neither party served written notice of filing of the 2014 order, the 2014 order is within our scope of review in wife's current appeal from the 2016 order. We conclude that the sale ordered in the 2014 order was based on a misapplication of the law regarding hold-harmless agreements, and the district court's requirement that husband take possession of, and sell, the home improperly modified the 2012 judgment. Because the district court abused its discretion by ordering the sale of the home, we reverse and remand.

## FACTS

The stipulated property division in the December 2012 judgment dissolving the marriage of husband Steven Johnson and wife Cheryl Johnson (a) awarded wife the marital homestead; (b) made wife "solely responsible for the expenses related to the homestead, including but not limited to the mortgage payment, taxes, utilities and other related expenses"; and (c) required wife to "hold [husband] harmless." Wife stopped making the mortgage and other home-related payments in February 2013, and husband sought an order (a) compel-

Minn. Const. art. VI, § 10.

ling her to refinance the mortgage and remove his name from that mortgage; and (b) finding wife in contempt for failing to make the payments required by the judgment. In May 2013, the district court ordered wife to refinance the mortgage. The order also required wife to remove husband's name from the mortgage and from "all household related bills and other joint credit for which she is responsible pursuant to the divorce decree." The order did not find wife in contempt. When wife failed to comply with the order, in August 2013 husband again moved the district court to find wife in contempt.

In an order filed in December 2013, the district court found that wife had not refinanced the mortgage, ruled her to be in civil contempt of court, and gave her 45 days to purge the contempt by refinancing the mortgage. When wife did not do so, the district court filed a May 2014 order stating:

> [B]ecause [wife] has failed to refinance the homestead and remove [husband's] name from the mortgage, his credit rating is being affected by her inability to pay the mortgage. Therefore, it is only fair that [wife] immediately place the home on the market for sale and allow [husband] to have regular updates and input regarding the sale process.

Wife did not appeal this order.

In February 2016, husband sought an order finding wife in contempt for failing to make regular mortgage payments and sell the home. Husband also asked the district court to transfer the home to him. In June 2016, the district court filed an order stating:

> [Wife] has not refinanced the homestead mortgage as required by the dissolution decree and post-decree orders.... [Wife] was required to refinance the homestead following the divorce so that [husband's] name would

be removed from the mortgage. [Husband] will continue to suffer the ramifications of having this mortgage on his credit report until [wife] has refinanced. [Wife] has been unable to refinance the mortgage.

> ... [S]ometimes a homestead must be sold when a divorce reduces a household's income. [Wife] has not taken the steps to place the home on the market or made any attempts to sell the house, even though that is the only remaining option. Therefore, this Court, after giving her one last chance to do so, has no choice but to grant [husband] the opportunity to sell the home and remove his name from the mortgage by that route.

The order stated that if wife failed to refinance or sell the home within 60 days, husband could take possession of the home and sell it for fair market value. The order directed that wife "shall be awarded all proceeds from the sale of the homestead," less the outstanding mortgage balance, commission, and certain expenses.

Wife appeals the June 2016 order.

## ISSUES

I. Is the district court's 2014 order requiring wife to sell her home reviewable in this appeal from the 2016 order?

II. Did the district court abuse its discretion by ordering wife to sell the home as a remedy for her failure to hold husband harmless for homestead-related expenses, when that remedy was not included as part of the dissolution judgment?

## ANALYSIS

### I

Wife appeals from the district court's June 2016 order. Generally, "appellate courts may review any order affecting the order from which the appeal is taken."

Minn. R. Civ. App. P. 103.04. Here, the 2014 order affects the June 2016 order because the portion of the June 2016 order directing husband to sell wife's home reflects the district court's attempt to implement the requirement in its 2014 order that wife sell her home.

■ Because the 2014 order directed wife to sell her home, it was, functionally, an affirmative injunction. *See State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cty. Bd. of Cty. Comm'rs,* 799 N.W.2d 619, 626 (Minn.App. 2011) (distinguishing a "a negative injunction, which restrains a party from an act" from "an affirmative injunction, which commands the doing of some positive act by the defendant") (quotation omitted). Orders deciding injunction matters are appealable. Minn. R. Civ. App. P. 103.03(b). Once the time to appeal a decision of the district court expires, that ruling is final, even if it is wrong. *See Dieseth v. Calder Mfg. Co.,* 275 Minn. 365, 370-71, 147 N.W.2d 100, 103 (1966) (stating that "[e]ven though the decision of the trial court in the first order may have been wrong, if it is an appealable order it is still final after the time for appeal has expired"); *see also Dailey v. Chermak,* 709 N.W.2d 626, 631 (Minn.App. 2006) (applying *Dieseth* to marital-dissolution dispute), *review denied* (Minn. May 16, 2006). If the time to appeal the 2014 order expired, the order's requirement that wife's home be sold was final, even if it was wrong.

■ Generally, the time to appeal an order expires 60 days after service by a party of written notice of the order's filing. Minn. R. Civ. App. P. 104.01, subd. 1. If a party does not serve written notice of filing of an otherwise appealable order, that order remains appealable. *See Curtis v. Curtis,* 442 N.W.2d 173, 176 (Minn.App. 1989) ("Nothing in the record shows any service of written notice of filing of any of the orders at issue here. Despite the fact that the first of these orders was dated nearly four years ago, its appeal must be considered to be timely filed under Rule 104.01."); *see generally Rieman v. Joubert,* 376 N.W.2d 681, 684 (Minn. 1985) (noting that when "no notice of filing is served, the ... time period never starts, and a party apparently has an indefinite period of time in which to make post-trial motions").

■ Because this record was unclear whether a party had served effective notice of filing of the 2014 order, we directed the parties to file supplemental memoranda addressing that question. Review of the parties' supplemental submissions shows that no party served written notice of filing of the 2014 order, and that the documents husband asserts satisfy that purpose do not fulfill the requirements of a notice of filing. *See Rieman,* 376 N.W.2d at 683 & n.1 (addressing the elements of a written notice of filing); *see also Levine v. Hauser,* 431 N.W.2d 269, 270-71 (Minn. App. 1988) (declining "to reward counsel's inattention" to the need to serve proper notice of filing by entering the debate of whether certain documents satisfied the requirements of a notice of filing).[1] Be-

---

1. We note that a party's actual knowledge that an order has been filed does not obviate the need for service of written notice of filing. The purpose of the notice is to unambiguously start the time within which a party may seek relief under the relevant rules. *See Rieman,* 376 N.W.2d at 684 (stating that actual knowledge of the filing of the order in question is insufficient to satisfy the requirement of service of notice of filing because service of the notice is "essentially a timing mechanism"); *Westling v. City of St. Louis Park,* 279 Minn. 366, 368 n.2, 157 N.W.2d 56, 58 n.2 (1968) (noting that even where a party received copies of the district court's decision and was advised that the order would be filed, "knowledge of the filing does not satisfy the requirements for service of written notice"). Therefore, wife's actual knowledge that the 2014

cause there was no service of an effective written notice of filing of the 2014 order, the time to appeal that order did not expire. Therefore, that order was not "final" for purposes of *Dieseth* which, in turn, means that review of that order in this appeal from the June 2016 order is possible under Minn. R. Civ. App. P. 103.04.

## II

■ Noting that the dissolution judgment did not mention or otherwise authorize sale of the house if she failed to hold husband harmless regarding its expenses, wife challenges the requirement that the house be sold to enforce her obligation to hold husband harmless.

■ While a [district] court may not modify a final property division, it may issue orders to implement, enforce, or clarify the provisions of a decree, so long as it does not change the parties' substantive rights. An order implementing or enforcing a dissolution decree does not affect the parties' substantive rights when it does not increase or decrease the original division of marital property. This court will not disturb an appropriate order to clarify, implement, or enforce terms of a decree, absent an abuse of discretion. *Nelson v. Nelson*, 806 N.W.2d 870, 871 (Minn.App. 2011) (alteration in original) (quotation and citations omitted). A district court abuses its discretion by making findings unsupported by the evidence, misapplying the law, or reaching a clearly erroneous conclusion that is contrary to logic and the facts on record. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997); *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

■ The question presented is whether the district court abused its discretion by ordering the sale of wife's home as a remedy for her breach of her obligation to hold husband harmless for the expenses associated with her home. We conclude that it did, because the required sale of wife's home misapplies the law regarding hold-harmless agreements, and is simply beyond the scope of the remedies afforded by the judgment.

We initially note that a sale of the property is neither mentioned in, nor otherwise contemplated by, this dissolution judgment. The stipulated judgment states:

> [Wife] is awarded the homestead free from any claim or interest by [husband]. [Wife] is also solely responsible for the ... taxes, utilities and other related expenses, and she shall hold [husband] harmless. [Wife] is solely responsible for paying any late fees on the mortgage payments made since the court hearing.

The judgment requires wife to "hold [husband] harmless" regarding homestead-related expenses. To "hold harmless" means to "absolve (another party) from any responsibility for damage or other liability arising from the transaction; indemnify." *Black's Law Dictionary* 848 (10th ed. 2014). Generally, a "hold-harmless agreement" is an agreement "in which one party agrees to indemnify the other." *Id.* at 849; *see id.* at 886 (stating that "indemnify" means to "hold harmless"). This general definitional equivalence between holding another harmless and indemnifying another is reflected in Minnesota's civil caselaw. *See First Class Valet Servs., LLC v. Gleason*, 892 N.W.2d 848, 851 (Minn.App. 2017) (equating "hold harmless" with "indemnification" in a negligence action brought by an employer against its employee for negligent performance of duties); *see also Weller v. Eames*, 15 Minn. 461, 465, 15 Gil. 376, 378 (1870) (stating that "to indemnify

order had been filed did not limit the time to appeal that order.

against legal liability means to save harmless from loss occasioned by legal liability"). And in the specific context of family law, Minnesota courts have not interpreted "hold harmless" to mean anything other than "indemnify."

 Indemnity is the remedy securing "the right of a person to recover reimbursement from another for the discharge of a liability which, as between himself and the other, should have been discharged by the other." *Maskrey v. Maskrey*, 380 N.W.2d 598, 601 (Minn.App. 1986) (quotation omitted). Generally, an indemnitor's obligation to indemnify is triggered only after the indemnitee has suffered "actual loss or damage." *St. Paul Fire & Marine Ins. Co. v. Cent. Nat'l Ins. Co. of Omaha*, 480 N.W.2d 681, 685 (Minn. App. 1992) (citation omitted); *see also Nw. Nat'l Ins. Co. ex rel. Swanberg v. Carlson*, 711 N.W.2d 821, 825 (Minn.App. 2006) (noting that under common law "the right of indemnity does not accrue until the liability of the party seeking indemnity has become finally fixed and ascertained, or until after the claimant has settled or has paid the judgment" (quotation omitted)). Whether this general rule that loss must be incurred before indemnification is required applies in a particular case depends on the language of the relevant provision because caselaw distinguishes between a "strict contract of indemnity against loss or damage" and indemnity "against mere liability." *Trapp v. R-Vec Corp.*, 359 N.W.2d 323, 327 (Minn.App. 1984) (emphasis omitted).

 Here, it is undisputed that wife neither paid the homestead-related expenses nor held husband harmless regarding those expenses. It is also undisputed that, while the stipulated judgment could have done so, it does not specify a remedy

for wife's failure to satisfy her obligations in these matters. *See generally Indep. Consol. Sch. Dist. No. 24 v. Carlstrom*, 277 Minn. 117, 120-21, 151 N.W.2d 784, 786-87 (1967) (noting that parties to a contract may stipulate to the "remedies which shall be available in the event of breach"). In the contractual context, a claim based on an express indemnification provision is a legal, rather than equitable, claim, and the remedies for breach are usually monetary in nature. *United Prairie Bank–Mountain Lake v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 63 (Minn. 2012); *see also Geldert v. Am. Nat'l Bank*, 506 N.W.2d 22, 29 (Minn.App. 1993) (stating that "[t]he doctrine of indemnity is based upon the idea that when one is compelled to pay money which in justice another ought to pay, the former may recover of the latter the amount actually paid"), *review denied* (Minn. Nov. 16, 1993). Here, however, instead of awarding husband a money judgment, the 2014 order directed wife to "immediately place the home on the market for sale." When she did not do so, the district court allowed husband to take possession of wife's homestead. This required sale is not authorized by the hold-harmless provision (or any other provision) in the dissolution judgment. Additionally, the required sale is contrary to the idea that, generally, the remedy for breach of an indemnification obligation is to be monetary in nature. Because the general idea that the remedy for a breach of an indemnification obligation is to be monetary is not displaced by a provision in this judgment, the nonmonetary remedy imposed by the district court for wife's violation of her indemnification obligation constitutes a misapplication of the law. Therefore, we conclude that the district court abused its discretion by ordering the sale.[2]

---

2. We also note that the sale of wife's homestead ordered by the district court deprived

## DECISION

Because there was no service of written notice of filing of the district court's 2014 order directing wife to sell her homestead, and that order affects the 2016 order, that order is reviewable in this appeal taken from the 2016 order allowing husband to take possession of and sell wife's home. Because the order authorizing the sale of the home exceeds the scope of the remedies associated with indemnity agreements, exceeds the terms of the judgment, and is contrary to the general concept of finality associated with dissolution judgments, we reverse both the 2014 order allowing husband possession of and directing sale of wife's homestead and the 2016 order implementing that required sale.[3]

**Reversed and remanded.**

wife of the statutory protections and homestead exemptions under Minnesota Statutes chapter 510 applicable in the execution of a judgment for money damages.

3. While we wholeheartedly sympathize with the frustration of the district court and husband at wife's repeated failures to comply with the court's directives, we cannot countenance a remedy that is contrary to the relevant law.