ANDERSON, Justice.
A family dispute over real-estate ownership resulted in a land partition action. That action was settled and judgment was issued by the district court, based on a 2012 stipulated settlement by the parties. The key to the settlement was an agreement by respondent Leland Sehlstrom to convey a gravel pit to appellant Randy Sehlstrom. Leland reserved a one-seventh interest in sand and gravel royalties. Under the settlement and the resulting judgment, Randy was required to pay these royalties, account for sales, and sign releases allowing Leland to contact gravel purchasers for verification purposes. In 2017, Leland deposed two gravel purchasers, pursuant to Minn. R. Civ. P. 69. Both testified that Randy told them not to talk to Leland, and both produced documents showing potential underpayment of royalties by Randy.
The district court found Randy in contempt for failure to pay royalties and imposed 30 days of jail. The order allowed Randy to purge the contempt finding by paying the allegedly missing royalties, as well as attorney fees. The court of appeals affirmed the contempt order but reversed and remanded for more detailed calculations of the underpayment and attorney fees. We reverse the decision of the court of appeals and remand to the district court for further proceedings.
FACTS
On February 1, 2011, Randy brought a partition action against Leland and the other Sehlstrom siblings and spouses. An important element of that dispute was the division of real property in Roseau County on which a gravel pit is located.
The parties settled the action with the terms set out in a written stipulation. Judgment was entered on January 19, 2012, adopting the entire stipulation as agreed on by the parties. Leland agreed to convey the gravel pit to Randy but reserved a "perpetual [one-seventh] interest in and to all royalties of the sand and gravel located upon the real estate being conveyed to [Randy] herein." Further, the stipulation provided that Leland "shall receive *236 [one-seventh] of all gross sales of said sand and gravel located upon said property," and that Randy "shall provide ... Leland ... with [one-seventh] of all sales/compensation for the use of sand and gravel from said acres." Finally, the stipulation provided that Randy "shall provide [Leland] a full and complete accounting of all sand and gravel sales and uses" and "shall provide a release to ... Leland ... such that [he] shall be allowed direct contact and information from each buyer or user of the sand and gravel coming from said acres, to verify the transactions."
On August 12, 2013, Leland moved the district court to hold Randy "in contempt of court for his refusal to comply with the Court's order dated January 19, 2012." He also moved that Randy be ordered to "immediately provide ... Leland ... his one-seventh share of all proceeds from the sale of sand and gravel...." Finally, he moved the court to order that Randy provide a "full and complete accounting of all sand and gravel sales." The court denied this motion because "an accounting has been provided, albeit not in a very timely manner," and because proceeds "have been provided to [Leland]."
Later, Leland came to believe again that Randy was not properly disclosing sales of sand and gravel and that he was being underpaid for his royalties. On April 25, 2017, Leland's attorney sent Randy's attorney a letter, stating that he sought to reopen discovery on the subject of Randy's compliance with the January 19, 2012 judgment. He wrote: "This matter is not closed until my client is paid in full. Please see Minn. Rules of Civil Procedure 69, which indicates that a judgment creditor may obtain discovery from any person, including the judgment debtor, in the manner provided by these rules."
On May 9, 2017, Leland noticed the depositions of two gravel purchasers. On May 15, Randy moved for a protective order pursuant to Minn. R. Civ. P. 26. Randy argued that Leland was not a "judgment creditor" entitled to Rule 69 postjudgment discovery. The district court allowed the depositions but ordered that the transcripts be sealed and filed with the court pending resolution of Randy's motion for a protective order.
One week later, Leland deposed the two gravel purchasers. Both purchasers testified that Randy told them not to speak with Leland about gravel sales. Both also produced documents showing how much sand and gravel was taken from the pit. Leland argued that these receipts showed that Randy had not accounted for $126,562.86 of sand and gravel sold and that he was entitled to one-seventh of that amount, or $18,080.40. After deducting the $5,505.08 previously paid to Leland by Randy, Leland claimed that he was entitled to an additional $12,575.32.
On June 8, 2017, the district court denied Randy's motion for a protective order, finding:
Leland Sehlstrom was awarded a percentage of money generated from the gravel pit in this matter. As such he is a judgment creditor for money and Rule 69 of the Rules of Civil Procedure allows for discovery in aid of the judgment or execution. Further it was obviously contemplated by the parties that some discovery might be needed as [Randy] was to sign any releases necessary to obtain the information regarding income from the gravel pit from third parties.
Leland then moved for an order holding Randy in contempt for his refusal to comply with the settlement and resulting judgment of January 19, 2012. He sought a $12,575.33 judgment in addition to reasonable costs and attorney fees. He also asked that Randy serve 30 days in jail unless he complied with the court's order.
*237 The district court ordered Randy to show cause why this contempt motion should not be granted. In turn, Randy filed a demand for a jury trial "on all fact issues including the recovery of money...."
On September 1, 2017, the district court granted Leland's contempt motion. It found Randy in contempt "for his refusal to comply with the Court's Order dated January 19, 2012," imposed 30 days of jail, stayed on condition that Randy comply with the order, and awarded Leland $12,575.33, plus attorney fees and costs. On October 6, 2017, the district court awarded Leland $3,137 in attorney fees.
Randy appealed the June order denying his motion for a protective order, the September order holding him in contempt, and the October order awarding Leland attorney fees, and Leland cross-appealed from the award of attorney fees.
The court of appeals affirmed in part, reversed in part, and remanded in an unpublished opinion. Sehlstrom v. Sehlstrom , No. A17-1732, 2018 WL 2090631, at *7 (Minn. App. May 7, 2018). The court concluded that "[f]or the purpose of rule 69, [Leland] is a judgment creditor. He was awarded a percentage of money from sand and gravel harvested and sold from [Randy's] land." Id. at *3. Thus, Leland could use Rule 69 to recover whatever money was owed him based on the 2012 judgment. Id. Alternatively, "the depositions at issue here could have been undertaken using the 2012 judgment alone," without recourse to Rule 69. Id. at *4. The court of appeals further held that the district court acted within its discretion holding Randy in contempt because the "2012 order adequately defined the actions [Randy] needed to perform, and he had reasonable time to do so." Id. at *6. With respect to Leland's cross-appeal on the attorney-fees award, the court reversed and remanded so that the district court could make a more "exact calculation based on covered costs as to what attorney fees should be" and "what money [Leland] is due." Id. at *6-7.
We granted Randy's petition for review. Randy argues that the January 2012 judgment granted Leland a real-property interest in unaccrued royalties from the gravel pit but did not establish a debt. Randy further argues that, in the absence of a judgment debt, the stipulated judgment did not make him a judgment debtor or Leland a judgment creditor. Rule 69 therefore did not permit postjudgment discovery. And, because the court of appeals reversed the finding of the district court as to the amount Randy owed, he argues that it is an "absurd conclusion that [he] was held in contempt for failing to pay royalties to Leland that no judge or jury had ever correctly determined were due."
Leland responds that the 2012 judgment is "a judgment for the payment of money" because the "judgment requir[es] the payment of money." Although the exact amount of money awarded was to be determined when the sand and gravel was sold, that the money was awarded pursuant to a valid judgment made Leland a judgment creditor. Leland "did not need to proceed under Rule 69 in order to conduct discovery" because the judgment itself supported discovery. And, Leland contends, Randy's instructions to the gravel buyers, which were revealed in their depositions, supported contempt.
ANALYSIS
We must decide whether a party who acquired a royalty interest through a stipulated judgment may enforce that interest by postjudgment discovery and a contempt motion.
I.
We focus first on whether Leland was entitled to postjudgment discovery under *238 Minn. R. Civ. P. 69. That question turns on whether Leland was a "judgment creditor," as that term is used in the rule, by virtue of the 2012 stipulated judgment. We conclude that he was not.
"Stipulated judgments are treated as binding contracts." Halla Nursery, Inc. v. City of Chanhassen , 781 N.W.2d 880, 884 (Minn. 2010). The interpretation of an unambiguous contract presents a question of law. Brookfield Trade Ctr., Inc. v. County of Ramsey , 584 N.W.2d 390, 394 (Minn. 1998). We review questions of law de novo. Modrow v. JP Foodservice, Inc. , 656 N.W.2d 389, 393 (Minn. 2003).
"We interpret our rules of civil procedure de novo." Walsh v. U.S. Bank, N.A. , 851 N.W.2d 598, 601 (Minn. 2014). The district court " 'has wide discretion to issue discovery orders and, absent clear abuse of that discretion, normally its order with respect thereto will not be disturbed.' " In re Comm'r of Pub. Safety , 735 N.W.2d 706, 711 (Minn. 2007) (quoting Shetka v. Kueppers , 454 N.W.2d 916, 921 (Minn. 1990) ).
"In aid of the judgment or execution, the judgment creditor ... may obtain discovery from any person, including the judgment debtor...." Minn. R. Civ. P. 69 (emphasis added). Rule 69 does not define "judgment creditor." In the absence of a definition, Leland turns to Minn. Stat. § 551.03, subd. 2 (2018). That statute defines "judgment creditor" as "a party who has a judgment for the recovery of money in the civil action...." Id. Randy insists that Black's Law Dictionary provides the proper, narrower definition of "judgment creditor"-"[a] person having a legal right to enforce execution of a judgment for a specific sum of money." Judgment Creditor, Black's Law Dictionary (10th ed. 2014) (emphasis added).
We need not choose between these definitions because we conclude that there is no debt that is subject to collection by a judgment creditor. Both definitions, and the rule itself, contemplate one party owing to another party a debt that is subject to collection. See, e.g. , Minn. R. Civ. P. 69 (referencing "the judgment debtor " (emphasis added)). But even Leland's more general definition does not support the conclusion that the 2012 stipulated judgment created a debt.
The stipulated judgment reflects unambiguous contract language. It provides that Leland and his wife "shall execute a Quit Claim Deed conveying their interest" in the gravel pit but "shall reserve a perpetual [one-seventh] interest in and to all royalties of the sand and gravel located upon the real estate being conveyed to the Plaintiff herein." The royalty provides "compensation" "for the use of sand and gravel from said acres."
Nothing in this unambiguous language suggests, or establishes, that a debt was created. Rather, the judgment supports the conclusion that Leland obtained an "unaccrued" royalty interest. A royalty is "unaccrued" when it is "to be paid from future production." Owen L. Anderson et al., Oil & Gas Law & Taxation , § 1.5(B), at 25 (2017). The majority view is that an interest in unaccrued royalty is a real property interest. See id. ; 3 Eugene Kuntz, Oil and Gas , § 38.2, at 259 (1989) ("[I]t is generally recognized that unaccrued royalty is properly classified as real property...."); see also Green v. Biddle , 21 U.S. (8 Wheat.) 1, 76, 5 L.Ed. 547 (1823) (" 'For what,' says Lord Coke ... 'is the land, but the profits thereof.' " (quoting 1 Edward Coke, The First Part of the Institutes of the Laws of England, or, a Commentary upon Littleton 4b (Francis Hargrave et al., eds., 1st Am. ed. 1812))). As an interest in land, Leland's royalty established by the *239 judgment was not a debt; Randy therefore was not a judgment debtor; and accordingly, the stipulated judgment was not a money judgment. Thus, Leland was not a "judgment creditor."
Other unambiguous language in the stipulated judgment supports this conclusion. For example, money judgments may not be collected after 10 years, see Minn. Stat. § 550.01 (2018) ("The party in whose favor a judgment is given ... may proceed to enforce the same, at any time within ten years after the entry thereof , in the manner provided by law." (emphasis added)), but by the plain language of the stipulation, the parties intended their royalty agreement to create a "perpetual" interest, i.e., one that would last forever.
Moreover, the 2012 judgment lacks other notable characteristics often associated with money judgments. For example, the judgment was "not intended to provide compensation for past injuries," was "not reducible to a sum certain," and "no monies were sought by [Leland] as a creditor or obligee." Penn Terra Ltd. v. Dep't of Envtl. Res. , 733 F.2d 267, 278 (3d Cir. 1984) (considering these factors in determining whether a judgment was a "money judgment").
We conclude that Leland was not a "judgment creditor" under the January 2012 order. He therefore was not entitled to Rule 69 postjudgment discovery.[1]
II.
We next turn to the district court's finding of contempt against Randy. "The district court's decision to invoke its contempt powers is subject to reversal for abuse of discretion." In re Welfare of J.B. , 782 N.W.2d 535, 538 (Minn. 2010). We review an order for an abuse of discretion "by determining whether the district court made findings unsupported by the evidence or by improperly applying the law." In re Comm'r of Pub. Safety , 735 N.W.2d at 711.
We conclude that the district court abused its discretion. Minnesota Statutes ch. 588 (2018) governs the contempt power. "Constructive contempts are those not committed in the immediate presence of the court, and of which it has no personal knowledge, and may arise from ... disobedience of any lawful judgment, order, or process of the court." Minn. Stat. § 588.01, subd. 3(3). "In addressing the limits on a trial judge's exercise of civil contempt powers[,] ... one essential prerequisite is that the prior decree or order of a court sought to be enforced by contempt must clearly define the acts to be performed by the alleged contemnor." Mr. Steak, Inc. v. Sandquist Steaks, Inc. , 309 Minn. 408, 245 N.W.2d 837, 838 (1976). Here, the court of appeals reversed the specific finding of the district court that Randy owed Leland more than he had already paid as not supported by the record. See Sehlstrom , 2018 WL 2090631, at *7. At a minimum, the contempt order does not clearly define what acts Randy must perform. This the law does not allow, Mr. Steak , 245 N.W.2d at 838, and therefore the district court abused its discretion.
Even if we agreed with Leland that the stipulated judgment really was a *240 "money judgment," a contempt motion was not a proper enforcement mechanism. Rather, the remedy provided by the rule is a writ of execution. See Minn. R. Civ. P. 69 ("Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise.").[2] There is good reason for this rule. To hold otherwise, as the court of appeals did, would allow a creditor to invoke a court's contempt power to collect ordinary judgment debts; this outcome is problematic, at best, given the prohibition in the Minnesota Constitution against imprisonment for failure to pay debts. Minn. Const. art. I, § 12 ("No person shall be imprisoned for debt in this state....").
Last, and for a similar reason, the award of attorney fees is reversed. Leland points to Minn. Stat. § 588.11 as allowing attorney fees against a contemnor. This basis for attorney fees does not apply because Randy cannot be held in contempt based on the facts presented here.
CONCLUSION
For the foregoing reasons, we reverse the court of appeals and remand to the district court to vacate the orders subject to this appeal.
Reversed and remanded.

We do not agree that the stipulated judgment alone supported discovery, as suggested by the court of appeals. Leland explicitly relied upon Rule 69 to take the depositions, not the release or accounting provisions of the judgment. Moreover, Randy persuasively argues that the plain language of the stipulated judgment does not contemplate postjudgment discovery. Because Leland was not entitled to conduct postjudgment discovery, the protective order issue is moot. Our decision does not prejudice Leland's right to pursue a remedy under the stipulated judgment-for example, a breach of contract action. See Mr. Steak, Inc. v. Sandquist Steaks, Inc. , 309 Minn. 408, 245 N.W.2d 837, 838-39 (1976).

Nowhere in Rule 69 is contempt mentioned as a possible remedy, and the exception that is provided is usually read narrowly. See, e.g. , Aetna Cas. & Sur. Co. v. Markarian , 114 F.3d 346, 349 (1st Cir. 1997) ("The 'otherwise' clause [in the comparable federal rule] is narrowly construed. It does not authorize enforcement of a civil money judgment by methods other than a writ of execution, except where well established principles [so] warrant." (citation omitted) (internal quotation marks omitted) (alteration in original)); Combs v. Ryan's Coal Co. , 785 F.2d 970, 980 (11th Cir. 1986) (same); see also Markarian , 114 F.3d at 349 n.4 (describing "the types of extraordinary circumstances which warrant departure from the general rule that money judgments are enforced by means of writs of execution rather than by resort to the contempt power of the courts"). As a result, absent extraordinary circumstances, "when a party fails to satisfy a court-imposed money judgment the appropriate remedy is a writ of execution, not a finding of contempt." Combs , 785 F.2d at 980.