*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0600**

John P. Norusis,
Appellant,

vs.

City of Marine on Saint Croix,
Respondent.

**Filed January 22, 2024
Affirmed
Segal, Chief Judge**

Washington County District Court
File No. 82-CV-20-3974

Brandon M. Schwartz, Schwartz Law Firm, Oakdale, Minnesota (for appellant)

Paul Donald Reuvers, Andrew A. Wolf, Iverson Reuvers, Bloomington, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Segal, Chief Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**SEGAL**, Chief Judge

In this dispute over respondent city's enforcement of its short-term-rental ordinance, appellant challenges the district court's order finding him in constructive civil contempt and awarding to respondent the attorney fees it incurred in seeking to bring appellant into compliance with the injunction issued by the district court. Appellant argues that the

district court improperly imposed a criminal-contempt sanction and that the order is not supported by the competent evidence in the record. We affirm.

**FACTS**

In 2018, appellant John P. Norusis purchased a property in respondent City of Marine on Saint Croix for approximately $1.1 million. He subsequently made the property available for short-term rentals, including for weddings and other events. Throughout 2019 and 2020, the property was rented dozens of times, primarily through Airbnb, a short-term rentals website. But in August 2020, the city enacted an ordinance that imposed regulations on short-term rentals within the city. Marine on Saint Croix, Minn., Ordinance No. 2020-156 (2020). Despite the ordinance and complaints made by neighbors to the city, Norusis continued to offer the property for short-term rentals.

In October 2020, Norusis filed a civil complaint seeking a declaration that his use of the property for short-term rentals was permissible or that the ordinance was unconstitutional, and an injunction to prevent the city from enforcing the ordinance. The city filed a counterclaim seeking a "declaratory judgment from the Court identifying and confirming all violations of the Ordinance on the property" and injunctive relief. The parties filed cross-motions for summary judgment. After a hearing, the district court granted partial summary judgment in favor of the city and dismissed Norusis's claims for declaratory and injunctive relief. The district court denied both parties' motions for summary judgment on the city's counterclaims and held a court trial on those claims in January 2022.

2

In June 2022—after the court trial was held but before the district court issued its ruling—Norusis executed a quitclaim deed conveying his interest in the property to VRBNB Holdings, LLC. VRBNB is solely owned by Hodl Holdings, LLC, which is in turn solely owned by Norusis. Four days later, on June 9, the district court issued an order dismissing the city's claim for declaratory judgment but granting the city's request for injunctive relief (the injunction). The district court permanently enjoined Norusis from (1) "renting or offering to rent the Property without first obtaining a license as required by [the ordinance]" and (2) "using the Property for events" as prohibited by the ordinance.

In August 2022, the city filed a motion for "an Order to Show Cause why [Norusis] should not be held in contempt for his flagrant and ongoing violations of th[e] Court's permanent injunction." The city alleged that "Norusis [was] using a pseudonym to continue engaging in the precise conduct the Court enjoined" and was therefore in contempt of the district court's order. In support of its motion, the city presented an affidavit from E.S., a person who claimed to have rented the property through an Airbnb listing. According to the affidavit, E.S. submitted a request to rent the property through Airbnb on June 22, 2022—after the injunction was issued—and her request to rent the property for several days in July was thereafter accepted.[1] She averred that the Airbnb host provided a phone number and that she communicated with the host using that phone number. The city alleged that the phone number provided to E.S. was Norusis's phone number, suggesting that E.S. was communicating with Norusis about the rental. The city

_____

[1] E.S. paid to rent the property from July 14-17, 2022, but did not actually stay there due to issues with the property, including this litigation.

3

also provided evidence that at least one other group rented the property in July 2022 through the vacation rental listing website Vrbo and communicated with the host using the same phone number. Finally, the city included in its filings a printout of an Airbnb listing for the property dated August 2, 2022. The account on the listing had the same account number that Norusis used to list the property prior to the injunction, but the name on the account had been changed from "Ralph/John" to "Vrbnb."

The district court issued an order to show cause and held a hearing on the contempt allegation in October 2022. Norusis was the only person to testify at the hearing. Norusis testified that when he deeded the property to VRBNB he also transferred the Airbnb and Vrbo accounts and that he had not been involved in the management of the listings or any rentals since that time. He testified that, after the transfer, he hired an individual to be the operator of VRBNB and manage the property. Norusis further testified that he has not had any contact with that individual since he hired him and was unable to explain how that individual was paid and in what amounts. But Norusis confirmed his phone number, which matched the phone number E.S. used to communicate with the Airbnb host.

In January 2023, the district court issued an order finding Norusis in constructive civil contempt of the injunction. The district court found that Norusis was not credible when he testified that, after the injunction was issued, he did not control or manage the property, had no contact with the individual allegedly managing the property, and did not offer the property for rent. The district court further found that "Norusis, either individually or in his capacity as sole owner of Hodl Holdings, communicated with [E.S.] regarding the rental in July 2022 and offered to rent [her] the Property." The district court

4

determined that this conduct amounted to constructive civil contempt and that "the appropriate sanction in this case [was] an award of attorney fees to the City." The city subsequently submitted documentation of the attorney fees it incurred, and the district court ordered Norusis to pay $13,369.74 to the city.

## DECISION

Norusis makes two arguments on appeal. First, he contends that the contempt order amounted to a criminal-contempt sanction issued without the level of due process required in criminal proceedings. Second, he argues that the record is insufficient to support the district court's determination that he violated the injunction.

We review a district court's decision to invoke its contempt powers for an abuse of discretion. *Sehlstrom v. Sehlstrom*, 925 N.W.2d 233, 239 (Minn. 2019). Appellate courts "review an order for an abuse of discretion by determining whether the district court made findings unsupported by the evidence or . . . improperly appl[ied] the law." *Id.* (quotation omitted).

## I. The district court did not impose a criminal-contempt sanction.

Minnesota law recognizes both direct and constructive contempt. Minn. Stat. § 588.01, subd. 1 (2022). Here, the district court found Norusis in constructive contempt of the injunction. A finding of contempt is constructive if the conduct at issue is "not committed in the immediate presence of the court, and of which it has no personal knowledge," and if it arises from any one of 11 specified "acts or omissions." *Id.*, subd. 3 (2022). As relevant here, the enumerated "acts or omissions" include "disobedience of any lawful judgment, order, or process of the court." *Id.*, subd. 3(3).

5

Caselaw also distinguishes between civil and criminal contempt. *See State v. Tatum*, 556 N.W.2d 541, 544 (Minn. 1996). Criminal-contempt orders are meant to be punitive and "vindicat[e] the court's authority by punishing the contemnor for past behavior." *Id.* If a person is alleged to be in constructive criminal contempt, the matter should be prosecuted by attorneys representing the state. *Peterson v. Peterson*, 153 N.W.2d 825, 830 (Minn. 1967). An individual charged with constructive criminal contempt is also afforded the same rights and protections accorded criminal defendants, such as the right to a written complaint stating the allegations, the right to be tried by a jury, and the requirement that the state prove its case beyond a reasonable doubt. *Id.* at 827, 830; *State v. Binder*, 251 N.W. 665, 668 (Minn. 1933).

In contrast, civil-contempt orders are intended to be remedial, and generally "vindicat[e] the rights of a party by imposing a sanction that will be removed upon compliance with a court order that has been defied." *Tatum*, 556 N.W.2d at 544. As such, "[c]ivil contempt proceedings are designed to induce future performance of a valid court order, not to punish for past failure to perform." *Mahady v. Mahady*, 448 N.W.2d 888, 890 (Minn. App. 1989). "[T]he only objective [of civil-contempt orders] is to secure compliance with an order." *Hopp v. Hopp*, 156 N.W.2d 212, 216 (Minn. 1968).

The applicable section of the order states:

> There is nothing in the record that demonstrates that the Property has been rented since the Injunction issued. However, Norusis violated the Injunction by offering to rent the Property. The Court finds that the appropriate sanction in this case is an award of attorney fees to the City.

Norusis acknowledges that the district court's order states that Norusis was found in constructive civil contempt of the injunction. But he argues that, because the district court stated that it was awarding attorney fees to the city as a "sanction," the award amounted to a punishment for past behavior, and that the order therefore constitutes a criminal, not a civil, contempt order.

Norusis's argument, however, ignores the provision in the order that the attorney fees were awarded pursuant to Minn. Stat. § 588.11 (2022). That statute authorizes the court to award compensation for the loss and injury caused by a contemnor's violation of a court order:

> If any actual loss or injury to a party in an action or special proceeding, prejudicial to the person's right therein, is caused by such contempt, the court or officer, . . . may order the person guilty of the contempt to pay the party aggrieved a sum of money sufficient to indemnify the party and satisfy the party's costs and expenses, including a reasonable attorney's fee . . . .

Minn. Stat. § 588.11. As the supreme court observed when interpreting an earlier version of this statute, the mere fact "[t]hat the award may be designated as a fine does not change its character" from a civil damages award to a criminal contempt sanction.[2] *Campbell*, 186

---

[2] The earlier version of the statute provided in relevant part:

> If any actual loss or injury to a party in an action or special proceeding, prejudicial to his right therein, is caused by such contempt, the court or officer, in addition to the fine or imprisonment imposed therefor, may order the person guilty of the contempt to pay the party aggrieved a sum of money sufficient to indemnify him and satisfy his costs and expenses.

*Campbell v. Motion Picture Mach. Operators*, 186 N.W. 787, 788-89 (Minn. 1922) (quoting section 8364 of the General Statutes of 1913).

N.W. at 789. Similarly here, the district court's use of the word "sanction" does not change its character. The award of attorney fees to the city was not a punitive sanction, but compensation to the city—as provided in Minn. Stat. § 588.11—for the costs it incurred as a consequence of Norusis's violation of the injunction. This purpose is consistent with the goal of "vindicating the rights of a party." *Tatum*, 556 N.W.2d at 544.

Moreover, this court has upheld an award of attorney fees under Minn. Stat. § 588.11 even though we reversed a different sanction imposed in the same case as an improper criminal-contempt sanction. *See In re Marriage of Nelson*, 408 N.W.2d 618, 621-22 (Minn. App. 1987). In *Nelson*, the contemnor was found to be in constructive civil contempt of protective orders. *Id.* at 620. The district court ordered the contemnor to serve 90 days in jail, with 80 days conditionally stayed, and awarded the other party attorney fees pursuant to Minn. Stat. § 588.11. *Id.*

On appeal, this court vacated the portion of the contempt order sentencing the contemnor to jail. *Id.* at 622. We determined that the jail sentence was "an exercise of the [district] court's criminal contempt powers" and must be reversed because it was imposed without affording the contemnor the procedural safeguards required during a criminal-contempt proceeding. *Id.* at 621-22. But we affirmed the award of attorney fees to the other party under Minn. Stat. § 588.11 and explained that the party "incurred those fees in an attempt to secure [its] rights under the protection orders" and "[t]he fact that the [jail] sanction imposed makes this proceeding one for criminal contempt is no reason to deny [the party] the right to be indemnified for those fees." *Id.* at 622.

8

Norusis cites the nonprecedential case of *Town of West Lakeland v. Auleciems*, No. A19-1992, 2021 WL 79789, at *3, (Minn. App. Jan. 11, 2021), as supporting his argument.[3] But, in the *West Lakeland* case, we reached a similar result as we did in *Nelson*—we reversed the sanctions of a fine and conditional jail sentence as having improperly imposed criminal-contempt sanctions, but we left in place the award of attorney fees. 2021 WL 79789, at *5-6. We had upheld the award of fees as appropriate under Minn. Stat. § 588.11 in a prior appeal in the same case. *Town of West Lakeland v. Auleciems*, No. A19-1211, 2020 WL 1130318, at *4 (Minn. App. Mar. 9, 2020), *rev denied* (Minn. May 27, 2020).

We therefore reject Norusis's argument that the award of attorney fees to the city under Minn. Stat. § 588.11 is a criminal-contempt sanction. The lack of purge conditions in the order does not alter the result. As explained above, an award of attorney fees under Minn. Stat. § 588.11 must be based on damages actually incurred by a party due to the contemnor's violation of an order. *See Campbell*, 186 N.W. at 789. Even if the district court had imposed purge conditions and those conditions were satisfied by Norusis, the city would still have incurred fees in securing compliance and would be entitled to be indemnified for them. *See Nelson*, 408 N.W.2d at 622. Accordingly, the award of attorney fees was not a criminal-contempt sanction, and Norusis's rights were not violated.

---

[3] Nonprecedential opinions are not binding authority, but can be cited for their persuasive value. Minn. R. Civ. App. 136.01, subd.1(c).

**II.    The record supports the district court's determination that Norusis violated the injunction.**

We now turn to Norusis's argument that the record is insufficient to support the finding that he was in constructive contempt of the injunction.  As noted above, a party may be found in constructive contempt if, outside of the presence of the court, the party disobeys "any lawful judgment, order, or process of the court."  Minn. Stat. § 588.01, subd. 3(3).  Here, the district court determined that "Norusis violated the Injunction by offering to rent the Property" after the injunction went into effect.

Norusis maintains that the only evidence the district court could consider was evidence presented during the show-cause hearing and, because he was the only person to testify, his testimony was the only competent evidence before the court.  He contends that the district court's reliance on E.S.'s affidavit in its contempt order was thus in error and that, without E.S.'s affidavit, the district court's order has no support in the record.

Norusis relies on Minn. Stat. § 588.09 (2022) to support his argument.  That statute provides: "When the person arrested has been brought into court, or has appeared, the court or officer shall investigate the charge by examining the person and the witnesses for and against the person, for which an adjournment may be had from time to time, if necessary."  Minn. Stat. § 588.09.  Norusis argues that, under this statute, the district court may only consider the testimony of witnesses at the contempt hearing and must disregard other evidence before the court, such as affidavits.  We are not persuaded.

The essence of this statute is ensuring the right of the contemnor to be heard by the district court; it does not serve to restrict the evidence that the district court may consider.

10

Rather, the supreme court has explained the minimum requirements that a civil-contempt proceeding must meet:

> (1) the court has jurisdiction over the subject matter and the person;
> (2) a clear definition of the acts to be performed;
> (3) notice of the acts to be performed and a reasonable time within which to comply;
> (4) an application by the party seeking enforcement giving specific grounds for complaint;
> (5) a hearing, after due notice, to give the nonperforming party an opportunity to show compliance or the reasons for failure;
> (6) a formal determination by the court of failure to comply and, if so, whether conditional confinement will aid compliance;
> (7) an opportunity for the nonperforming party to show inability to comply despite a good faith effort; and
> (8) the contemnor's ability to gain release through compliance or a good faith effort to comply.

*State v. Iron Waffle Coffee Co.*, 990 N.W.2d 513, 521 (Minn. App. 2023) (quotation omitted) (citing *Hopp*, 156 N.W.2d at 216-17).

Norusis was given a hearing and afforded "an opportunity to show compliance or the reasons for failure" at that hearing. *Id.* But nothing in Minn. Stat. § 588.09 or applicable caselaw required the district court to credit Norusis's testimony. At the hearing, Norusis was questioned about E.S.'s affidavit and denied offering to rent E.S. the property or communicating with her. The district court's order states:

> The Court finds Norusis' testimony that he did not offer to rent the Property after the Injunction issued is not credible. The Court finds that Norusis, either individually or in his capacity as sole owner of Hodl Holdings, communicated with [E.S.] regarding the rental in July 2022 and offered to rent the Property to [E.S.].

11

This court defers to the district court's credibility determinations. *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 298 (Minn. App. 2007). Norusis thus failed to establish that he had complied with the injunction at the hearing. Because the district court committed no error by relying on the affidavit evidence submitted by the city, the record supports the district court's determination that Norusis was in constructive civil contempt of the injunction.

**Affirmed.**