*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1246**

In re the Marriage of:

David Gordon Wingad, petitioner,
Respondent,

vs.

Janet Marie Wingad,
Appellant.

**Filed June 17, 2024
Affirmed in part, reversed in part, and remanded
Frisch, Judge**

Dakota County District Court
File No. 19HA-FA-18-144

Deborah M. Gallenberg, Dudley and Smith, Mendota Heights, Minnesota (for respondent)

JanetMarie Nature, Eagan, Minnesota (pro se appellant)

Considered and decided by Larkin, Presiding Judge; Bratvold, Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Judge

Appellant argues that the district court improperly modified a final property division and abused its discretion in finding her in contempt of court. Because appellant did not show that she was prejudiced by any modification to the final property division, we affirm

in part. But because the district court did not follow the proper procedure in making its contempt finding, we reverse in part, and remand.

## FACTS

In 2018, respondent David Gordon Wingad petitioned for dissolution of his marriage to appellant JanetMarie Nature, f/k/a Janet Marie Wingad. In 2019, the district court entered a judgment and decree in which the district court ordered the division of certain real property—the parties' Eagan home (the homestead) and a rental property in Faribault (the Faribault property)—and awarded Nature a personal-property equalizer payment. Nature moved the district court to correct and amend the judgment and decree and to stay the judgment and decree.

Following a hearing, the district court entered an amended judgment and decree. Under the amended judgment and decree, the parties were to sell the homestead. Nature was awarded sole occupancy and use of the homestead and was responsible for all liabilities associated with the homestead until the sale. The net proceeds from the sale, defined as any amount remaining after sale expenses and the homestead mortgage, were to be allocated as follows: (1) the first $20,000 to Nature for her nonmarital interest in the property, and (2) the remaining net proceeds equally divided between the parties.

The district court awarded the Faribault property to Nature and the parties' son, who signed the mortgage and was listed on the title to the Faribault property. The award was conditioned on Nature refinancing the mortgage on the Faribault property "to remove [Wingad] from the mortgage and pay to [Wingad] $22,036.70 (or other sum as agreed upon by the parties in concert with [their son])." If Nature could not satisfy that condition, the

2

Faribault property was to be sold. The net proceeds from the sale, defined as the sale price less any amount remaining after sale expenses and the mortgage on the Faribault property, were to be allocated as follows:

> (1) the first $27,000 to [Nature] for her non-marital interest; and (2) the remaining net proceeds equally divided between the parties (as the parties' [son] has indicated he is not interested in receiving any monetary compensation for his interest in the property – but only to the extent this is or remains the case. Otherwise, the division shall be as agreed upon by the parties in concert with [their son]).

And Wingad was to pay Nature $6,966 for her marital interest in certain personal property.

### Prior Appeals

Nature appealed the amended judgment and decree, challenging, in part, the district court's allocation of the parties' real property and order to sell the homestead. We affirmed, reasoning that the district court did not abuse its discretion by declining to increase Nature's nonmarital property interest in the Faribault property, by declining to give Nature all the equity in the homestead, or by ordering the sale of the homestead. *Wingad v. Wingad*, No. A20-0781, 2021 WL 4428909, at *5-7 (Minn. App. Sept. 27, 2021), *rev. denied* (Minn. Dec. 14, 2021).

Nature appealed again, this time challenging the denial of a motion to vacate the judgment and for a new trial that she filed while her first appeal was pending. We dismissed the appeal as taken from a non-appealable order because Nature's "motion to vacate raised grounds that [Nature] either actually raised in the direct appeal of the amended judgment and decree or that [Nature] could have raised in that appeal."

3

Nature appealed a third time, this time challenging a June 2022 order that, in part, directed that (1) the homestead be placed on the market, (2) Nature refinance the Faribault property and pay Wingad his share of the equity, and (3) the equalizer payment be deducted from Wingad's share of the equity in the homestead. The order also provided that "[i]f the parties are unable to reach agreement on any *other* issues related to the sale of the homestead, that/those issue(s) shall immediately be submitted to binding arbitration" and that "[f]ailure to abide by any aspect of this Order shall constitute grounds for a finding of Contempt of Court." We questioned jurisdiction over the appeal. Nature filed a notice of voluntary dismissal, and we then dismissed the appeal as premature, noting that she could seek review of the order in a timely appeal from a final judgment entered on the order. Nature did not file another appeal of the June 2022 order.

### *Orders Currently Appealed*

In October 2022, Wingad moved, in part, for an order finding Nature in contempt for failing to comply with the June 2022 order, permitting Wingad to sell the homestead without Nature's signature, and ordering Nature to refinance or sell the Faribault property. Nature filed a responsive motion. In support of her motion, Nature filed an affidavit executed by the parties' son and his wife, in which son generally attested that he was unwilling to pay Wingad, that he was interested in receiving monetary compensation for his interest in the Faribault property, and that he did not want the Faribault property refinanced or sold.

In January 2023, following a hearing on the motions, the district court issued an order finding Nature in contempt of court because she prohibited arbitration of the issue of

4

how the proceeds from the sale of the homestead should be allocated, as set forth in the district court's June 2022 order. The district court found that Wingad should receive his portion of the equity in the Faribault property ($22,036.70) and attorney fees ($1,000), and Nature should receive her equalizer payment ($6,966) and her nonmarital interest ($20,000) from the net proceeds of the sale before division of the remaining equity in the homestead, and that the remaining equity should be divided equally. The order provided that the homestead be listed for $425,000, that Wingad had the authority to sign any documents necessary to sell the homestead without Nature's signature, and that upon the sale of the homestead, "[t]he first $3,929.30 of the net proceeds shall be paid to [Nature]" and "[t]he remaining net proceeds shall be divided equally between the parties."

In February 2023, Nature moved to dismiss the district court's June 2022 and January 2023 orders asserting that the orders impermissibly amended the amended judgment and decree. Nature alternatively moved for amended findings of the same orders and moved to stay the enforcement of these orders. In support of this motion, Nature also asserted that the district court improperly found her in contempt of court.

In June 2023, following a hearing on this motion, the district court denied Nature's motion to stay and disagreed with her contention that the district court had modified her substantive rights under the amended judgment and decree, writing, "Any so-called changes in substantive rights have been due to the parties' (not least among them [Nature's]) purposeful failure to follow this Court's Orders and the delays created thereby."

In August 2023, the district court issued amended findings and order which clarified that all relief requested by Nature and not addressed in the June 2023 order was denied.

5

Nature appeals the district court's January 2023, June 2023, and August 2023 orders.[1]

**DECISION**

Nature asserts that the district court improperly modified the final property division set forth in the amended judgment and decree and abused its discretion by finding her in contempt of court.[2] We address each issue in turn.

## I. We affirm the district court's final property division.

Nature argues that the district court improperly modified a final property division set forth in the amended judgment and decree with respect to (1) her "right" to "list and sell" her share of the homestead, (2) Wingad's Faribault property marital interest, and (3) the division and disbursement of proceeds from the sale of the homestead. Nature also argues that the district court modified the property division by awarding Wingad attorney fees. We address each argument in turn.[3]

---

[1] Nature also sought to appeal the district court's June 2022 order. We limited the scope of the current appeal to the district court's January 2023, June 2023, and August 2023 orders.

[2] Nature also seems to assert that the district court was not impartial based on its rulings permitting Wingad to sell the homestead without her signature and its finding that she was in contempt of court. This argument was not raised before the district court, and we therefore decline to consider it on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts generally address only those questions previously presented to and considered by the district court).

[3] Although Nature asserted that the district court modified the final property division in the amended judgment and decree by changing the method of payment of her equalizer payment, Nature also concedes that she takes no issue with the district court's order that the equalizer payment be paid from net proceeds of the sale of the homestead. We therefore do not consider this change as a basis for reversal of the January 2023 order.

While "a district court may not modify a final property division, it may issue orders to implement, enforce, or clarify the provisions of a decree, so long as it does not change the parties' substantive rights." *Nelson v. Nelson*, 806 N.W.2d 870, 871 (Minn. App. 2011) (quotation omitted). "An order implementing or enforcing a dissolution decree does not affect the parties' substantive rights when it does not increase or decrease the original division of marital property." *Id.* We "will not disturb an appropriate order to clarify, implement, or enforce terms of a decree, absent an abuse of discretion." *Id.* "A district court abuses its discretion by making findings unsupported by the evidence, misapplying the law, or reaching a clearly erroneous conclusion that is contrary to logic and the facts on record." *Johnson v. Johnson*, 902 N.W.2d 79, 84 (Minn. App. 2017); *see also Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (same).

### A.     Execution of Sale

Nature challenges the district court's decision to permit the sale of the homestead without her signature as an improper modification of the amended judgment and decree. We consider this argument moot because Nature did not procure a stay of the sale of the homestead pending appeal, and the homestead was sold during the pendency of this appeal.

"[T]he general rule is that when, pending appeal, an event occurs that makes a decision on the merits unnecessary or an award of effective relief impossible, the appeal should be dismissed as moot." *In re Application of Minnegasco*, 565 N.W.2d 706, 710 (Minn. 1997). "Some courts have used the power to look beyond the record for the purposes of determining mootness or other post-trial procedural matters." *Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 584 (Minn. 1977). The parties do not dispute that

7

during the pendency of this appeal, the homestead was sold and the net proceeds from that sale were deposited in a trust account. Reversal of the alleged modification of the final property division in the amended judgment and decree permitting Wingad to sell the homestead without Nature's signature will not provide her relief because the homestead has already been sold.

We may still consider a moot issue if an exception to the general rule applies, including when the issues are "capable of repetition, yet evade review," or when the "case is functionally justiciable and presents an important question of statewide significance that should be decided immediately." *Dean v. City of Winona*, 868 N.W.2d 1, 5-6, (Minn. 2015) (quotation omitted). These exceptions to the mootness doctrine do not apply. Nature is unlikely to be subjected to the same action, such that the issue is capable of repetition, and whether the district court abused its discretion by permitting Wingad to sell the homestead without Nature's signature does not present an urgent question of statewide significance. *See id.* (explaining exceptions to the mootness doctrine). And Nature has not produced evidence of collateral consequences from the January 2023 order to demonstrate that this issue is not moot. *See Winkowski v. Winkowski*, 989 N.W.2d 302, 308-09 (Minn. 2023) (stating that an appeal is not moot if "an appellant produces evidence that collateral consequences actually resulted from a judgment"). We therefore consider this issue moot without exception.

B.      **Wingad's Share of the Marital Interest in the Faribault Property**

Nature argues that the district court abused its discretion by modifying the amended judgment and decree to require payment of Wingad's share of the marital interest in the

8

Faribault property from the net proceeds of the sale of the homestead because the district court did not find that the parties agreed with their son that Wingad is entitled to marital interest of $22,036.70. We disagree.

The amended judgment and decree provides that Nature "pay to [Wingad] $22,036.70 (or other sum as agreed upon by the parties in concert with [son]) for his marital interest in the property." In support of her responsive motion, Nature filed an affidavit executed by son and his wife. In the affidavit, son attests that he is "no longer willing to pay" Wingad "a sum of $22,036.70 out of [son's] personal funds as a way to alleviate the on-going disagreement surrounding [Wingad's] entitlement to shared marital equity" in the Faribault property, that he is "interested in receiving any monetary compensation" for his interest in the Faribault property and therefore does not "agree to the amount of $22,036.70 as a fair and equitable distribution to [Wingad] for his marital interest in the property," and that he does not want the property refinanced or sold. But son's disagreement with the amount ordered by the district court does not mean that the district court modified the amended judgment and decree by ordering Nature to pay the amount set forth in the amended judgment and decree. The amended judgment and decree directs Nature to pay Wingad $22,036.70 *unless* the parties reach a different agreement with their son. It appears from the record that no such agreement was reached, and therefore it was consistent with the amended judgment and decree for the district court to order Nature to pay $22,036.70 for Wingad's share of the marital interest in the property.

9

## C. Homestead Sale Net Proceeds

Nature argues that the district court modified the definition of net proceeds from the homestead sale and reduced her award from receiving the first $20,000 of the net proceeds to receiving only the first $3,929.30 of the net proceeds. We disagree that the district court modified the definition of net proceeds but agree that the district court modified the final property division in the amended judgment and decree with respect to the distribution of net proceeds from the sale of the homestead in the January 2023 order.

The district court provided in its January 2023 order that net proceeds "shall be as defined in the Amended Judgment and Decree." The district court therefore did not modify the definition of net proceeds from the sale of the homestead set forth in the amended judgment and decree in its January 2023 order.

The district court changed the formula for distributing the net proceeds in a way that affects the parties' substantive rights, such that it amounts to a modification. *See Nelson*, 806 N.W.2d at 871 (stating that an "order implementing or enforcing a dissolution decree does not affect the parties' substantive rights when it does not increase or decrease the original division of marital property"). Nature focuses on the offsetting of obligations between the parties. But it is the order in which the offsets are taken—before or after the net proceeds are divided equally—that results in the modification to the final property division set forth in the amended judgment and decree.

In the amended judgment and decree, the net proceeds from the sale of the homestead were to be allocated as follows: (1) the first $20,000 to Nature for her nonmarital interest in the property, and (2) the remaining net proceeds equally divided between the

parties. The amended judgment and decree also provided for two payments not connected to the sale of the homestead: (1) Nature was to pay Wingad $22,036.70 or other sum as agreed between the parties and their son for Wingad's share of the marital interest in the Fairbault property, and (2) Wingad was to pay Nature a $6,966 equalizer payment for certain personal property.

The January 2023 order, by contrast, provides that upon the sale of the homestead, "the first $3,929.30 of the net proceeds shall be paid to [Nature]" and that "the remaining net proceeds shall be divided equally between the parties." The district court arrived at this procedure by finding that Wingad should receive his portion of the equity in the Faribault property ($22,036.70) and attorney fees ($1,000), and Nature should receive her equalizer payment ($6,966) and her nonmarital interest ($20,000) from the net proceeds of the sale before the remaining equity in the homestead was divided.

The modification arises from the payments between the parties being made *before* the net proceeds from the sale of the homestead were divided equally, rather than *after* the net proceeds from the sale of the homestead were divided equally. But this modification benefits Nature because it results in Nature retaining *more* money from the net proceeds of the sale of the homestead under the new formula than she would have under the amended judgment and decree.

This result does not justify a reversal of the district court's order. To obtain relief on appeal, the error must have prejudiced the appealing party. *Potter v. Potter*, 27 N.W.2d 784, 786 (Minn. 1947) ("[W]e do not reverse unless there is error causing harm to the appealing party."). Nature was not prejudiced by the district court's modification that

resulted in a benefit to her. We therefore decline to reverse the January 2023 order on this basis.[4]

### D. Attorney Fees

Nature asserts that the district court should not have awarded Wingad attorney fees and that awarding him attorney fees to be paid from the net proceeds from the sale of the homestead was an improper modification of the final property division in the amended judgment and decree. An award of attorney fees incurred to enforce an order is not a modification of a judgment and decree. It does not alter the property division. Rather, the award of attorney fees results in an obligation of one party to another separate from the property division. And attorney fees are a tool that a district court may use to help implement an order. *See* Minn. Stat. § 518.14 (2022) (providing that in a dissolution

---

[4] Wingad asserts that this modification was a "clerical error" that we may correct on appeal. This issue was not properly preserved for appeal because Wingad did not file a notice of related appeal (NORA) pursuant to Minn. R. Civ. App. P. 106 challenging that part of the district court's order that he considered adverse to him. *See City of Rochester v. Kottschade*, 896 N.W.2d 541, 545 n.3 (Minn. 2017) (stating that "a [NORA] is required to 'obtain review of a judgment or order entered in the same underlying action that may adversely affect respondent'" (quoting Minn. R. Civ. App. P. 106)).

Even so, we note that the nature of this error is not "clerical." "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time upon its own initiative or on the motion of any party and after such notice, if any, as the court orders." Minn. R. Civ. P. 60.01. Clerical errors are distinct from substantial mistakes under Minn. R. Civ. P. 60.02. *Egge v. Egge*, 361 N.W.2d 485, 488 (Minn. App. 1985). They "cannot be used to make the [judgment] say something other than what originally was pronounced." *Id.* (quotation omitted). The error alleged here is the choice of formula by the district court, rather than an incorrect computation under a formula the district court intended to use and is therefore substantive, not clerical, in nature. *See id.* (explaining that "[t]he alleged error in division of the sale proceeds is not arithmetic but rather formulaic, an error of the parties in expressing their basic intent" and was therefore "not clerical in nature").

proceeding, "[n]othing in this section or section 518A.735 precludes the court from awarding, in its discretion, additional fees, costs, and disbursements against a party who unreasonably contributes to the length or expense of the proceeding").

However, we read the district court's order as possibly awarding attorney fees as part of a contempt proceeding, which is distinct from the dissolution proceeding. The district court awarded Wingad attorney fees "for the necessity of having to bring" his motion, which in part requested an order finding Nature in contempt. We therefore turn to the propriety of the award of attorney fees as part of the contempt proceeding.[5]

## II. The district court abused its discretion in issuing a contempt order.

Nature argues that the district court abused its discretion by finding her in contempt of court for several reasons, including that the district court did not follow proper procedure before finding her in contempt of court. We agree.

We review a district court's decision to invoke its contempt powers for an abuse of discretion. *Sehlstrom v. Sehlstrom*, 925 N.W.2d 233, 239 (Minn. 2019). We "review an order for an abuse of discretion by determining whether the district court made findings unsupported by the evidence or by improperly applying the law." *Id.* (quotation omitted).

---

[5] Wingad asks us to reverse the district court's award regarding the coin and stamp collections set forth in the June 2022 order and maintained in the January 2023 order. Wingad did not file NORA, and we therefore do not consider his argument regarding the coin and stamp collections. *See Kottschade*, 896 N.W.2d at 545 n.3.

The procedure for contempt proceedings arising in a family-court matter is governed by Minn. R. Gen. Prac. 309. Contempt proceedings are initiated by notice of a motion and motion or by an order to show cause. Minn. R. Gen. Prac. 309.01(a). The initiating documents must at least contain (1) "a reference to the specific order or judgment of the court alleged to have been violated and the date of entry or filing of the order or judgment"; (2) "a quotation of the specific applicable provisions ordered"; (3) "the alleged failures to comply"; (4) notice regarding the alleged contemnor's obligations regarding ability to pay; and (5) the date to appear for a hearing. Minn. R. Gen. Prac. 309.01(b).

Wingad's motion did not comply with Minn. R. Gen. Prac. 309.01(b). Rather, Wingad generally requested in his motion that the district court find Nature "in contempt of court for failing to comply with the previous Court Order." Although the district court warned the parties in its June 2022 order that contempt was a possibility if the parties did not comply, the record does not reflect that the district court, or Wingad, notified Nature of specific allegations of her alleged failure to comply with provisions of the June 2022 order. The district court therefore abused its discretion by finding Nature in contempt when the initiating documents failed to give Nature proper notice. Accordingly, we reverse the district court's contempt finding, and—to the extent that its order is a final contempt order—the district court's final contempt order. *See Johnson v. Johnson*, 439 N.W.2d 430, 431 (Minn. App. 1989) (providing that a finding of contempt that cannot be purged is a final appealable order).

But it is unclear what relief ordered in the January 2023 order, if any, is a direct result of the contempt finding. The district court wrote, "As and for [Nature's] contempt

14

of court *and* to ensure that the homestead is sold as ordered, this court grants those portions of [Wingad's] requests for relief that are set forth below." (Emphasis added.) Much of the relief ordered—that the homestead be listed for sale for $425,000, that Wingad had the authority to sign the documents necessary to sell the homestead without Nature's signature, that Nature cooperate with attempts to sell and show the homestead, that no fixtures be removed from, or improvements made to, the homestead before its sale—is directly related to the sale of the homestead. But the district court determined that Wingad "should receive a portion of his attorney fees (in the sum of $1,000.00) for the necessity of having to bring" the motion. It is therefore unclear what relief granted in the January 2023 order is a result of the defective contempt ruling and what relief in the January 2023 order is an otherwise appropriate attempt to enforce the property division.

Because the basis for the relief granted by the district court is unclear, we remand to the district court the issue of contempt and the relief ordered. On remand, the district court may determine what relief, if any, to order, consistent with this opinion. *Cf. Hagen v. Schirmers*, 783 N.W.2d 212, 217-19 (Minn. App. 2010) (reversing a parenting-time determination for failure to consider a statutory 25% parenting-time presumption and remanding for the district court to consider the presumption when the district court was aware of the presumption but did not address it and ordered that a parent would receive less than 10% parenting time). We reiterate that a final contempt order in a family-court matter must be made pursuant to the procedure set forth in Minn. R. Gen. Prac. 309 and other applicable law. *See, e.g.*, Minn. Stat. §§ 588.01-.21 (2022) (governing contempt of court); *State v. Tatum*, 556 N.W.2d 541, 544-45 (Minn. 1996) (explaining the classification

15

of contempt as criminal or civil and direct or constructive); *Hopp v. Hopp*, 156 N.W.2d 212, 216-17 (Minn. 1968) (setting forth minimum requirements for civil-contempt proceedings).

**Affirmed in part, reversed in part, and remanded.**